## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**JONATHAN ALLEN,**

        **Petitioner,**

**v.**                                     **Case No. 5:18-cv-01463**

**WARDEN D.L. YOUNG**
**FCI Beckley,**

        **Respondent.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

On November 21, 2018, Petitioner, Jonathan Allen ("Allen"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of a prison disciplinary hearing. (ECF No. 2). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Given that the disciplinary hearing conducted by the prison complied with the constitutionally mandated due process requirements, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's request for dismissal, (ECF No. 12); **DENY** Allen's Motion to Compel Judgment, (ECF No. 31), as moot; **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 2), and **REMOVE** this matter from the docket of the Court.

## I.    <u>Relevant Procedural History</u>

Allen initiated this habeas proceeding during a period of incarceration at Federal Correctional Institution ("FCI") Beckley, located in Beaver, West Virginia. (ECF No. 1).[1] On June 1, 2011, Allen entered into a plea agreement in open court in the United States District Court for the Eastern District of Tennessee, admitting that he was guilty of one count of armed bank robbery and one count of brandishing a firearm during a crime of violence. *See United States v. Allen*, Case No. 1:10-cr-00005-HSM-SKL-1 (E.D. Tenn. Jan. 26, 2010) at ECF Nos. 113, 114, 136. On November 14, 2011, Allen was sentenced to a total term of 150 months imprisonment, with five years of supervised release. *Id.* at ECF Nos. 135, 136.

On December 17, 2017, while incarcerated in FCI Fort Dix, located in Fort Dix, New Jersey, Allen received an Incident Report prepared by members of the FCI Fort Dix Unit Discipline Committee ("UDC"). (ECF No. 12-1 at 5). The Incident Report included a description of the events leading to the issuance of the report prepared by Correctional Officer Campbell. (*Id.*). Officer Campbell explained that on December 17, 2017, at approximately 1:34 a.m., he was conducting rounds in the prison restroom. Officer Campbell heard a voice talking faintly in the shower area of the restroom and when he proceeded to investigate the source of the sound, he discovered an inmate using a cellular telephone. (*Id.*).

Officer Campbell ordered the inmate to give him the cellular telephone, but the

---

[1] Allen is no stranger to litigation in this Court having filed four additional petitions asserting numerous improprieties and challenging various disciplinary proceedings and assessments conducted by the Bureau of Prisons over the past two years. *See Allen v. Young*, Case No. 5:18-cv-01271 (S.D.W. Va. Aug. 31, 2018); *Allen v. Young*, Case No. 5:18-cv-01306 (S.D.W. Va. Sep. 20, 2018); *Allen v. Young*, Case No. 5:19-cv-00277 (S.D.W. Va. April 15, 2019); *Allen v. Young*, Case No. 5:19-cv-00811 (S.D.W. Va. Nov. 14, 2019).

inmate did not comply, asking if he could first remove the SIM card from the cellular phone. When Officer Campbell directed the inmate to hand the cellular phone over "as it was," he did so. The inmate stated, "it's my birthday" and "I did not mean any disrespect." (ECF No. 12-1 at 5).The inmate did not have his inmate identification card with him, but provided his name as Allen and a room assignment of 315. Officer Campbell  stated the inmate's identification as Allen was subsequently verified using the "the unit bed book cards." (*Id.*). The unit bed book cards are picture identification cards issued to all inmates incarcerated within Federal Bureau of Prisons ("BOP") facilities. (*Id.* at 2). The cards contain the inmate's photograph, name, and registration number and are used by prison staff to identify inmates. (*Id.*).

The UDC informed Allen in the Incident Report that, based on Officer Campbell's report, it was referring the charge to a Disciplinary Hearing Officer ("DHO") for further proceedings. (*Id.* at 5). Allen was informed by correctional staff of his right to make a statement or remain silent in response to the investigation. He was advised that, while his silence alone could not support a finding of guilt, the decision to remain silent "may be used to draw an adverse inference against you at any stage of the discipline process." (*Id.* at 6). Allen declined to make a statement regarding the Incident Report. (*Id.*).

On December 19, 2017, Allen received a Notice of Disciplinary Hearing before the DHO. (ECF No. 12-1 at 8). Allen was informed that he was charged with violating Code No. 108, possession of a hazardous tool, and 305, possession of anything unauthorized. (*Id.*) Allen signed a form acknowledging that he had been advised of the rights he would have at the DHO hearing, including the right to call witnesses, present evidence, and have a staff member represent him. (*Id.* at 10). Allen indicated he wished to have a staff representative, and that he wanted to call three witnesses in his defense. Allen stated the

witnesses would testify regarding his "whereabouts and search of room." (*Id*. at 8).

Allen's disciplinary hearing was held on January 11, 2018. (ECF No. 12-1 at 13). At the hearing, Allen made a statement in his defense, saying "[i]t wasn't me in the shower, it must have been someone else; Allen is a common name; The rules do not say they prohibit cell phones and I do not have a handbook." (*Id*. at 12). Three witnesses gave testimony in Allen's defense at the hearing. The witnesses testified telephonically, via speaker phone, as Allen was housed in the Special Housing Unit. (*Id*. at 13). Allen had provided twelve questions he wished the witnesses to answer. The questions were as follows:

1. On the night of the incident was inmate Allen asleep in his bed?

2. What time was the room searched?

3. Was Allen asleep at the time of the search?

4. Did Allen take a shower that night?

5. Was a phone found during the search?

6. Could you view the search?

7. Is there a due process model posted in the Unit?

8. Are the rules or prohibited acts posted in the Unit?

9. Do you have an inmate Handbook?

10. Does FTD follow the same rules as the rest of the BOP?

11. Do you know any other inmates named Allen?

12. Is a prohibited act a rule?

(ECF No. 12-1 at 12-13). The answers provided by the witnesses were recorded by DHO Nicholas Mullins, who conducted the hearing. (*Id*. at 13). On March 31, 2018, DHO Mullins issued a report summarizing the hearing, and explaining the basis for his

determination that Allen was guilty of violating Code No. 108. (ECF No. 12-1 at 12-15). Notwithstanding Allen's statement and the witnesses' testimony, DHO Mullins found that Allen had committed the prohibited act of possessing a hazardous tool, specifically a cellular phone. (*Id*. at 14). In reaching his decision, DHO Mullins considered the Incident Report, a chain of custody report dated December 17, 2017, and a photograph of the cellular phone in question. (*Id*.). DHO Mullins stated that he did not find Allen's denial "credible," and that he did not "have any reason to believe that staff would fabricate the details of this incident." (*Id*.). DHO Mullins drew an "adverse inference" against Allen based on his failure to deny his involvement in the earlier stages of the investigation. (*Id*.). DHO Mullins noted that the witnesses provided by Allen could not definitively account for his whereabouts during the time of the incident. (ECF No. 12-1 at 15). After he "weighed the facts of the case," DHO Mullins determined the evidence supported a finding that Allen committed the violation as charged. (*Id*.). The report was delivered to Allen on April 3, 2018. (*Id*.).

DHO Mullins also considered, but rejected, Allen's assertion that he was unaware he was prohibited from possessing a cell phone as he did not have a "handbook." (*Id*. at 14). DHO Mullins noted that all inmates are provided with an Inmate Handbook and introduced to institution rules upon entry to the prison and that if Allen had misplaced his handbook, he could have requested another or obtained a copy from the law library. (*Id*.). DHO Mullins additionally stated that Allen's argument he was unaware of the prohibited status of cellular phones was further undermined by the fact that he had previously received disciplinary sanctions for possessing a cellular phone. (*Id*.).

DHO Mullins imposed sanctions of 40 days disallowance of Good Conduct Time ("GCT"), 60 days forfeiture of non-vested GCT, and 12 months loss of commissary, email,

phone, and immediate family visiting privileges. In describing the basis for the sanctions, DHO Mullins stated that inmate possession of cell phones was forbidden as inmates' ability to make completely unmonitored phone calls "seriously jeopardizes the security of the institution." (ECF No. 12-1 at 15). Neither Respondent nor Allen included documents detailing Allen's appeal of DHO Mullins's decision; however, Respondent concedes that Allen properly exhausted his appeal of the determination. (ECF No. 12 at 7).

On November 21, 2018, Allen submitted the instant § 2241 petition and a supporting memorandum. (ECF Nos. 2, 3). Through his submissions, Allen contends that his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated by the disciplinary procedures employed by the BOP. (ECF No. 2 at 6). In the petition, Allen asserts that the BOP unlawfully revoked his GCT in violation of due process when they denied him the ability to present witnesses in his defense at the disciplinary hearing. (*Id.*). Allen additionally alleges that the BOP wrongfully imposed sanctions for repetitive behavior, denied his right to present and view evidence, denied him proper notice of the charges, used "unethical procedures," and provided an "unqualified fact finder." (*Id.* at 6-7).

Allen further asserts in his memorandum that DHO Mullins "overlooked exculpatory evidence," and failed to provide an accurate record of the proceedings. (ECF No. 3 at 1). Allen further contends that the investigation was flawed. Allen requests that this Court expunge the Incident Report in question from his record, amend the "over sentence of 60 days loss of additional Good Time," and adjust the sanctions to begin on January 11, 2018, the date of the DHO hearing. (*Id.* at 2).

Respondent issued a Response to the undersigned's Order to Show Cause on March 4, 2019, arguing that the petition should be dismissed as Allen received all the due

process rights to which he was entitled during the course of the disciplinary proceedings. (ECF No. 12 at 9). Respondent asserts that "there is simply no evidence" to support Allen's specific claims. (*Id*.). Respondent attached a number of documents detailing the underlying disciplinary process. (ECF No. 12-1).

On April 3, 2019, Allen submitted a Reply to Respondent's assertion that he is not entitled to relief. (ECF No. 14). In the Reply, Allen contends that as Respondent failed to deny his claim that DHO Mullins employed unethical procedures and was unqualified, it should be considered uncontested. (*Id*. at 1). Allen claims that DHO Mullins never received the training and certification necessary to be qualified as a DHO. (*Id*. at 2). Allen also alleges that DHO Mullins was not an employee of the BOP and was thus not authorized to conduct the hearing, because FCI Fort Dix is a private institution. (*Id*. at 2-3). Allen adds that DHO Mullins engaged in unethical and improper conduct by acting as both the investigator and adjudicator of Allen's disciplinary proceedings, and that DHO Mullins showed a bias against Allen by asserting that Allen was "clearly guilty" (*Id*. at 3-4). Allen further elaborates on his earlier blanket claims of due process violations, stating that  he was provided with an incorrect Notice of Hearing Form and DHO Mullins called the wrong witnesses at the hearing. (*Id*. at 4). Allen claims that DHO Mullins inadvertently included documents in his record that pertained to other inmates, frustrating Allen's ability to have a fair hearing. (*Id*. at 6). Finally, Allen argues that 60 days of non-vested GCT were wrongfully taken from him based on an earlier disciplinary infraction of which he was subsequently exonerated. (*Id*.).

On April 4, 2019, Respondent requested permission to file a sur-reply to Allen's Reply, asserting that the sur-reply was necessary as Allen raised new allegations in his filing. (ECF No. 15). The undersigned granted the request on April 5, 2019, and

Respondent submitted a Sur-reply on April 10, 2019. (ECF Nos. 16, 17).

In the Sur-reply, Respondent argues that many of Allen's newly raised assertions are "simply not true." (ECF No. 17 at 2). Respondent contends that DHO Mullins is in fact a BOP employee who has received the appropriate certification and attached documents in support. (*Id.;* ECF No. 17-1 at 2, 6). Respondent also asserts that FCI Fort Dix is not a private institution, but is under federal control. (ECF No. 17 at 2). Respondent concedes that the wrong inmate number was inadvertently listed on Allen's Notice of Discipline Hearing, but contends that this clerical error does not alter the fact that Allen received all the due process protections to which he was entitled. (*Id.* at 3). Respondent argues that, contrary to Allen's assertions, the DHO report makes clear that no discussions with Allen regarding the incident, or documents pertaining to other inmates, were considered in assessing whether Allen committed the act as charged. (*Id.* at 4). Respondent believes that Allen's "bald assertions" that the DHO acted improperly should be disregarded in the face of the record evidence. (*Id.*). Finally, Respondent contends that the sanctions imposed were permitted by BOP regulation, and Allen's argument that he was not on notice regarding what sanctions might be imposed is unavailing. (*Id.* at 5).

On April 12, 2019, Allen submitted a Response to Respondent's request for leave to file a sur-reply asking that the request be denied. (ECF Nos. 18, 18-1). On April 19, 2019, Allen submitted a Reply to Respondent's Sur-reply. (ECF No. 20). Allen contends first that Respondent was properly put on notice regarding all claims raised by Allen, and Respondent's failure to properly contest all the claims in his initial response means the claims should be viewed as procedurally defaulted and the burden of proof should be shifted to Respondent. (*Id.* at 1-2). As to Allen's claim that DHO Mullins never received proper training, Allen concedes that Respondent "provided sufficient evidence to negate

this claim." (*Id.* at 2). Allen refuses to concede, however, that FCI Fort Dix is a federal facility, claiming that Respondent "has failed to provide" evidence demonstrating the facility is properly considered to be under the authority of the United States Attorney General. (*Id.*).

As to his claims of due process violations, Allen contends that the record shows DHO Mullins acted improperly as both a hearing officer and an investigator and displayed bias in his statements regarding Allen's presumed guilt. (ECF No. 20 at 3). Allen asserts that he was in fact punished for repetitive conduct, specifically, that he was sanctioned with the loss of 60 days of non-vested GCT for repetitive conduct. (*Id.* at 3-4). Allen believes he was improperly punished for a prior disciplinary infraction for which he was later exonerated. (*Id.* at 4). Allen asserts that the DHO notice of hearing form which lists an incorrect inmate registration number is invalid and lists incorrect witnesses, while a different notice form he has provided is in fact the correct form and accurately lists the witnesses he wished to call. (*Id.* at 5; ECF No. 14-5 at 1). Allen asserts that he did not sign the invalid notice of hearing form, and the wrong witnesses were called at his hearing. (ECF No. 20 at 5-6). Allen contests DHO Mullins's assertion that he was present at the hearing when the witnesses were called, explaining that his absence during this portion of the hearing is reflected by the fact that Allen was required to prepare a list of questions for the witnesses. (*Id.* at 6).

Allen argues that DHO Mullins violated BOP regulations by imposing excessive sanctions without the proper findings of fact and that this departure from the appropriate sanctions "robbed" Allen of proper notice and "rendered his plea involuntary and violated due process." (*Id.*). Finally, Allen argues that DHO Mullins acted unethically and was not an impartial adjudicator as evidenced by the fact that Allen filed numerous grievances

against DHO Mullins's co-worker for sexual misconduct. (*Id.* at 7). Allen asserts that DHO Mullins acted improperly by investigating the incident prior to acting as an adjudicator, and that due to his improper investigation, Allen filed multiple complaints against DHO Mullins. (*Id.*). Allen contends that a hearing officer should not be permitted to impose sanctions on an inmate who has submitted grievances against the hearing officer. (*Id.*).

On April 26, 2019, Allen submitted a Motion to Compel Judgment, in which he argued that, as all the documents required for a ruling were submitted, this Court should rule in his favor. (ECF No. 22). On July 31, 2019, Allen submitted a second Motion to Compel, arguing that the case had been pending for too long, and he was prejudiced by the delay. (ECF No. 23). On August 2, 2019, the undersigned issued an Order denying Allen's Motions to Compel, explaining that, generally, habeas petitions are considered in the order in which they are filed. (ECF No. 24). On December 23, 2019, Allen submitted a request for a status update. (ECF No. 30). Allen submitted a third Motion to Compel Judgment on February 10, 2020, asking that a decision be granted in his case. (ECF No. 31).

## II.  **Standard of Review**

Respondent requests that this Court dismiss Petitioner's § 2241 petition, but does not discuss under what authority he brings the request. Because Respondent filed a Response concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole*

*Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion, without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint … as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III. <u>Discussion</u>

The Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment") protects inmates from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Allen has a constitutionally protected liberty interest in his good conduct time, as such time impacts the duration of his sentence. *See, e.g. Marino v. Masters*, No. 1:12-cv-00393, 2015 WL 66511, at *5 (S.D.W. Va. Jan. 5, 2015) (citing *Ponte v. Real,* 471 U.S. 491,

11

495 (1985)). Accordingly, when a federal prisoner is subject to a disciplinary proceeding that may result in the loss of good conduct credit, the prisoner is guaranteed certain minimal requirements of procedural due process, including:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, (1985) (citing *Wolff,* 418 U.S., at 563–567). The DHO follows a procedure that incorporates these due process protections. *See* 28 C.F.R. § 541.8.

Allen identifies a number of alleged improprieties throughout his various submissions.[2] As noted by Respondent, many of the claims advanced by Allen were not sufficiently presented in his initial petition.[3] Generally, when a litigant raises new claims in a responsive pleading to a motion to dismiss, those claims should not be considered absent a motion to amend. *See Weldon v. Nohe*, No. CV 3:16-3815, 2016 WL 7042931, at *3 (S.D.W. Va. Dec. 2, 2016), *aff'd*, 684 F. App'x 275 (4th Cir. 2017); *see also Miles v. Owen*, No. CIV.A. 4:12-998-MGL, 2013 WL 227766, at *2 (D.S.C. Jan. 22, 2013).

---

[2] Scattered throughout Allen's various replies, responses, and attached declarations, he discusses numerous improprieties he believed occurred throughout the course of his disciplinary proceedings. To the extent he asserts failures to follow internal BOP policies only, this does not amount to a constitutional deprivation. "[T]he failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met." *Allen v. Young*, No. CV 5:18-01306, 2019 WL 6843664, at *6 (S.D.W. Va. June 26, 2019), *report and recommendation adopted*, No. 5:18-CV-1306, 2019 WL 6859631 (S.D.W. Va. Dec. 16, 2019). Accordingly, the undersigned will only address Allen's various objections to the disciplinary proceedings to the extent a potential claim of constitutional dimension can be discerned.

[3] While Allen contends that the assertions made in his initial filing provided Respondent sufficient notice of his claims, (ECF No. 20 at 2), this is simply not true with respect to a number of new claims he raises in his subsequent submissions. For example, Respondent would have to possess admirable foresight to understand that, based on Allen's assertion DHO Mullins "used unethical procedures and was [an] unqualified fact finder" he intended to argue that FCI Fort Dix is not under BOP control and that DHO Mullins never took a required certification course. (ECF No. 2 at 7).

However, given Allen's *pro se* status, and Respondent's address of the claims, the undersigned will proceed to consider Allen's newly raised assertions to the extent a claim of a constitutional deprivation can be fairly made out.

### i.) DHO Mullins lacked required training

Allen asserts in his Reply to Respondent's request for dismissal that DHO Mullins, never received the training and certification necessary to be qualified as a DHO. (ECF No. 14 at 2). In attachments to the Sur-reply, Respondent included a certificate documenting DHO Mullins's completion of a training course for certification as a qualified DHO. (ECF No. 17-1 at 6). In response to this document, Allen concedes that Respondent "provided sufficient evidence to negate" his claim that DHO Mullins never received the required training, and accepts that "DHO Mullins appears credentialed as a DHO." (ECF No. 20 at 2).[4] Accordingly, the undersigned **FINDS** that this claim should be denied.

### ii.) FCI Fort Dix is not a federal facility

Allen asserts that FCI Fort Dix is a "contract facility" over which the Attorney General of the United States does not exercise control, meaning that DHO Mullins is "not an employee" of the BOP and thus "lacks the authority to impose sanctions" which result in the loss of GCT. (ECF No. 14 at 2-3). To make this argument, Allen relies on *Arellano v. Benov*, No. 1:13-CV-00558 AWI, 2014 WL 1271530 (E.D. Cal. Mar. 27, 2014) which in turn relies on *Arredondo-Virula v. Adler*, 510 F. App'x 581 (9th Cir. 2013), a case in which the Ninth Circuit Court of Appeals held that an employee of a private contractor that ran a federal correctional institution was not an employee of the Bureau of Prisons or the

---

[4] Allen provided no indication as to the factual basis for his claim that DHO Mullins never attended the required national training course and was not qualified to serve as a DHO. (ECF No. 14 at 2). His blithe abandonment of the claim when presented with evidence to the contrary does not inspire confidence that he had a good faith basis to raise this claim.

Federal Prison Industries, Inc.; therefore, the employee could not take disciplinary action against a federal prisoner. The Ninth Circuit's decision in *Arredondo-Virula* was based upon a regulation in place at the time, which stated that "only institution staff may take disciplinary action," 28 C.F.R § 541.10(b)(1) (2010) "Staff" was defined in 28 C.F.R. § 500.1(b)(1) as "any employee of the Bureau of Prisons or Federal Prison Industries, Inc."

Since the court's ruling in *Arredondo-Virula*, the Code of Federal Regulations was revised, including sections concerning the inmate disciplinary process. According to the revisions, which took effect on June 20, 2011, the inmate discipline program applies to all prisoners in BOP custody, including those held in a contracted facility. 28 C.F.R. § 541.2 (2011) provides:

> This program applies to sentenced and unsentenced inmates in Bureau custody. It also applies to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody *by direction of, or under an agreement with, the Bureau of Prisons.*

(emphasis added). Consequently, section 541.10(b)(1) (2010), which contained the language the Ninth Circuit found to be determinative in *Arredondo–Virula,* was repealed. Nevertheless, the disallowance of CGT by a contracted DHO remains problematic. Despite the incorporation of contracted facilities into the revised regulations, the regulatory purpose section remains unchanged, specifying only that "Bureau staff" may impose sanctions on inmates. *See* 28 C.F.R. § 541.1 ("This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts."). Under the revised regulations, "staff" is still defined in 28 C.F.R. § 500.1(b) as "any employee of the Bureau of Prisons or Federal Prison Industries, Inc." Accordingly, "it appears that any disciplinary sanction must be imposed by a BOP employee." *Green v.*

14

*Masters*, No. 1:14-CV-31194, 2017 WL 7312114, at *3 (S.D.W. Va. Dec. 13, 2017), *report and recommendation adopted*, No. CV 1:14-31194, 2018 WL 662511 (S.D.W. Va. Feb. 1, 2018).

Allen argues that Respondent has failed to refute his claim that FCI Fort Dix is an independent, contracted facility. (ECF No. 20 at 2). Allen believes that because Respondent has "not presented any proof or cited any law that states or proves that Ft. Dix is under the authority of the Attorney General," it must be assumed that the facility is privately owned and operated and, accordingly, DHO Mullins was not authorized to impose sanctions. (ECF No. 21 at 2). However, Respondent attached an affidavit from DHO Mullins in which he asserts that he is employed as a "Case Manager for the *Federal Bureau of Prisons*" and alternate DHO at FCI Fort Dix. (ECF No. 17-1 at 2) (emphasis added). Additionally, Respondent attached a Certificate of Completion, reflecting that DHO Mullins has completed the United States Department of Justice, Federal Bureau of Prisons National Corrections Academy training course. (*Id.* at 6). Allen has provided no indication as to what the basis is for his assertion that FCI Fort Dix is in fact a privately operated institution. Allen does assert that FCI Fort Dix contains inmates detained by the United States Immigration and Customs Enforcement, as well as federal prisoners from the District of Columbia, but does not explain how this fact supports his assertion. (ECF No. 14 at 2).

DHO Mullins explained that he is employed by the BOP, and he received his training pursuant to a BOP program. (ECF No. 17-1 at 2). FCI Fort Dix is a Federal Correctional Institution; there is no indication that it is, in fact, not under the control of the federal government and Allen has provided no reliable explanation for why he believes this to be so. On the BOP agency website, of which the undersigned takes judicial notice,

facilities may be located using either the filter "Private Correctional Institutions" ("CIs"), or "Federal Correctional Institutions" ("FCIs"). FCI Fort Dix is located under the FCI category. *See* https://www.bop.gov/locations/list.jsp.

Finally, federal courts have repeatedly permitted inmates detained at FCI Fort Dix to proceed with complaints alleging claims raised pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against FCI Fort Dix employees. *See e.g. Belt v. Fed. Bureau of Prisons,* 336 F. Supp. 3d 428, 440 (D.N.J. 2018). The Supreme Court of the United States has previously held that *Bivens* actions may not be brought against individuals employed by private facilities, which have contracted with the BOP to supervise federal inmates. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001). Accordingly, as *Bivens* actions may only be brought against federal officers, and these suits are routinely permitted to proceed against prison staff employed at FCI Fort Dix, it is clear that Allen's assertion that FCI Fort Dix is a privately-run institution is incorrect. As such, the undersigned **FINDS** this claim should be dismissed.

*iii.) The sanctions imposed were inappropriate*

Allen asserts that the sanction imposed by DHO Mullins in removing 60 days of non-vested GCT was excessive as it relied on repetitive conduct and federal regulations do not permit the forfeiture of GCT for repetitive conduct. (ECF No. 20 at 6). Allen additionally argues that, assuming the DHO was permitted to impose the loss of 60 days of non-vested GCT for this violation, Allen was not put on notice of this possible sanction and accordingly was denied the right to "make a fair and voluntary plea" in violation of due process. (ECF No. 14 at 7). Respondent argues that DHO Mullins was authorized to impose the sanctions under BOP regulations, and the DHO report reflects that he did not consider repetitive conduct as a factor in imposing the sanctions. (ECF No. 17 at 5).

16

In the hearing report, DHO Mullins explained the reasons for the sanctions imposed as being driven by the fact that "cellular phones are considered sensitive equipment." (ECF No. 12-1 at 15). DHO Mullins noted that with access to cellular phones and the unmonitored communication they provide, inmates may pose "a threat to the ability of staff to provide for the safety and security" of the institution as inmates may use the cellular phones to plan escape attempts, make threats, or arrange other illicit activities. (*Id.*). With respect to the loss of non-vested GCT specifically, DHO Mullins stated he imposed the sanction "to deter future misconduct." (*Id.*).

The Incident Report prepared in this case noted that "Inmate Allen already has from 8-1-17 a pending DHO for a 108 charge." (*Id.* at 6). Filings from a separate § 2241 case Allen has pending in this Court reveal that on November 17, 2017, Allen received an Incident Report identified as Incident Report No. 3016879, which informed him he was being charged with a violation of Prohibited Act Code 108 for possessing a cellular phone on August 1, 2017. *See Allen v. Young,* Case No. 5:18-cv-01271 (S.D.W. Va. Aug. 31, 2018), ECF No. 2 at 20. Allen was found guilty of committing the violation following a hearing held on December 21, 2017. *Id.* at 18. Allen appealed the finding, and the Regional Director granted the appeal and remanded the Incident Report for rehearing on July 6, 2018. *Id.* at ECF No. 21 at 2. This Court accordingly, denied, over Allen's objections, his petition as the remand rendered moot his challenge to the validity of the disciplinary proceedings. *Id.* at 4. The outcome of the remand for rehearing for the Incident Report issued on November 17, 2017, is not apparent from the record.

The thrust of Allen's argument appears to be that he was improperly sanctioned for repetitive conduct as DHO Mullins punished him for the violation contained in Incident Report No. 3016879, a violation for which he was later exonerated. Contrary to

Allen's assertion, however, there is no indication in the report that DHO Mullins imposed the sanction of the loss of 60 days of non-vested GCT due to Allen's previous infraction. DHO Mullins does not mention Incident Report No. 3016879 in the section explaining the reasons for the sanctions imposed and states that the loss of 60 days of non-vested GCT was imposed specifically to "deter future misconduct." (ECF No. 12-1 at 15). The only portion of the DHO Report which references Incident Report No. 3016879 is the section whereby DHO Mullins rejected Allen's claim he was unaware possessing a cellphone was prohibited due to the fact that Allen had previously been charged with possessing a cellphone. (*Id.* at 14). This was a reasonable conclusion as, whether or not Allen was ultimately found guilty of the prohibited act, being charged with possessing a cellphone in violation of prison rules would certainly put an individual on notice that they were not permitted to possess a cellphone.

The BOP is charged with the responsibility of administering and overseeing the federal prison system. See 18 U.S.C. § 4042. In accordance with this duty, the BOP has promulgated rules for inmate discipline in order to provide for the safety of those who are employed and housed within federal correctional institutions. *See* 28 C.F.R. § 541.3. The relevant regulations categorize prohibited acts according to their level of severity. *See* 28 C.F.R. § 541.3(b). The Prohibited Act Code which Allen was found to have violated, Code 108, which forbids the possession of a hazardous tool, is designated as a "Greatest Severity Level Prohibited Act[]." *Id.* Table 1, 108. As such, the sanctions available against one who has been found guilty of committing a Prohibited Code 108 offense includes the loss of "earned statutory good time or non-vested good conduct time (up to 100%)." *Id.* Table 1, Available Sanctions for Highest Severity Level Prohibited Acts B.

18

Allen refers to 28 C.F.R. § 541.4, and BOP Program Statement 5270.09, which he asserts reveal that DHO Mullins was prohibited from imposing sanctions greater than the recommended mandatory range of 41 days without specifically finding that the offense was either aggravated or repetitive. (ECF No. 20 at 6). These regulations only speak to the mandatory *minimum* punishments available, however, and do not require any particular finding in order to impose sanctions above the mandatory floor. *See* 28 C.F.R. § 541.8(g) ("If you committed a prohibited act(s), the DHO can impose any of the available sanctions listed in Tables 1 and 2."); *see also Rosa v. Grondolsky*, No. CIV.A. 13-10496-JGD, 2013 WL 3491077, at *8 (D. Mass. July 9, 2013). Contrary to Allen's assertion, there is nothing in the regulations which require a valid finding of repetitive conduct in order to impose the sanction of forfeiture of non-vested GCT.[5] Federal courts have frequently found the forfeiture of significantly more non-vested GCT days than were imposed in this case an appropriate sanction for inmates who were found guilty of having possessed a cellular phone in violation of BOP rules. *See Wheeler v. Perdue,* No. 1:14CV36, 2015 WL 366412, at *9 (N.D.W. Va. Jan. 27, 2015) (sanction of loss of 324 non-vested CGT days not excessive for possession of cellular phones); *see also Sillah v. Ratledge*, No. 7:16CV00100, 2016 WL 6956658, at *2 (W.D. Va. Nov. 28, 2016) (sanction of loss of 187 days of non-vested GCT for possession of cellular phone was within allowed range of sanctions and not excessive); *Morris v. Wilson*, No. 3:11CV360, 2012 WL 628612, at *4 (E.D. Va. Feb.

---

[5] Allen discusses the fact that Table 2 of the regulations, which outlines when additional sanctions may be imposed based on a finding of repetitive conduct, states that 18 months of Disciplinary Segregation may be imposed for multiple violations of greatest severity level codes and concludes that DHO Mullins was barred from imposing a sanction of loss of non-vested GCT based on this section. (ECF No. 14 at 6). However, that section, which authorizes an additional six months in disciplinary segregation for consecutive violations, does not change the fact that forfeiture of 100% of non-vested GCT is expressly permitted based on a violation of a Code 100 violation regardless of whether it is a consecutive violation. See 28 C.F.R. § 541.3.

27, 2012) (forfeiture of 472 days of non-vested GCT for a Code 108 violation, for possession of a cell phone, was within the range specified by the Code of Federal Regulations and not excessive); *Ray v. Masters*, No. 1:15-CV-06712, 2017 WL 975948, at *5 (S.D.W. Va. Feb. 13, 2017*), report and recommendation adopted sub nom. Ray v. English*, No. CV 1:15-06712, 2017 WL 971043 (S.D.W. Va. Mar. 13, 2017) ("Therefore, the undersigned [finds] that the sanctions imposed fell within the range of those authorized by BOP regulations and Petitioner's claim that the DHO was too severe in accordance with BOP policy is without merit.").

The sanction of forfeiture of 60 days of non-vested GCT days was within the range permitted by the relevant Code of Federal Regulations and DHO Mullins adequately explained his reasons for imposing the sanction in the report.[6] The undersigned accordingly, **FINDS** the sanction was not impermissibly excessive and its imposition did not implicate any constitutional rights.

*iv.) Notice of sanctions*

Allen additionally alleges that, if the DHO was permitted to impose the sanction of loss of non-vested GCT, he was not adequately put on notice of this possibility and was consequently deprived of the right to enter a knowing guilty plea. (ECF No. 20 at 6). There is no merit to this argument. Due process requires that prison officials give an accused inmate written notice of the charges against him at least twenty-four hours prior to

---

[6] Allen has supplied a document entitled Inmate Discipline Data Chronological Disciplinary Record dated from July 30, 2018 which states that the sanction of 60 days loss of non-vested GCT was "due to repetitive misconduct and to deter future misconduct." (ECF No. 21-1 at 1). As the reasons for the sanctions imposed in the report do not mention repetitive behavior as a factor, it is unclear what repetitive misconduct this designation refers to, or if it is instead a clerical error. However, as the relevant regulations permit the sanctions imposed regardless of whether or not a finding of repetitive behavior is made, the document does not indicate an error of constitutional significance. *See Hopkins v. Tamez*, No. 4:08-CV-742A, 2009 WL 424152, at *4 (N.D. Tex. Feb. 19, 2009).

conducting a disciplinary hearing. *See Wolff*, 418 U.S. at 564. The Incident Report notified Allen that he was being charged with Prohibited Act Code 108, for his possession of a cellular phone, over 24 hours before his hearing on this charge was held. (ECF No. 12-1 at 5). Informing Allen of the charge against him and the facts surrounding the charge provided him with constitutionally sufficient notice. *Brown v. Saad*, No. 3:17-CV-100, 2018 WL 2144366, at *7 (N.D.W. Va. Apr. 9, 2018), *report and recommendation adopted*, No. 3:17-CV-100, 2018 WL 2138539 (N.D.W. Va. May 9, 2018) (no violation of notice when inmate was charged with one prohibited code violation but convicted of another where based on same facts); *see also Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008). BOP regulations clearly delineate the penalties available for infractions, and the punishment imposed was in accordance with those proscribed penalties. *See* 28 C.F.R. § 541.3. The fact that Allen may have erroneously believed he would not face these sanctions does not mean he was deprived of constitutionally valid notice. Accordingly, the undersigned **FINDS** that this claim should be dismissed.

*v.) Documents pertaining to other inmates were included in Allen's record*

Allen asserts that records which pertained to other inmates with similar names were included in his disciplinary record at various times and that their inclusion "influence[d] DHO Mullins decision of finding [sic] [Allen] guilty." (ECF No. 20 at 5). Allen does not specifically identify any documents that were erroneously included in his record which DHO Mullins relied on at the hearing.

Allen has not described any identifiable prejudice which accrued to him based on these alleged errors, nor has he explained how they amounted to a violation of constitutional magnitude. Neither the UDC determination, nor DHO Mullins's record of

the hearing reflect reliance on any documents related to other inmates. The UDC relied on the Incident Report prepared by Officer Campbell, who observed an inmate using a cellular phone and confirmed the inmate was Allen through the prison inmate identification system. (ECF No. 12-1 at 5). DHO Mullins relied on the UDC investigation and Incident Report, a chain of custody document dated December 17, 2017, and a photo sheet depicting the cellular phone in determining Allen's guilt. (*Id.* at 14). Allen does not assert that these documents pertained to other inmates, and the record does not reflect that DHO Mullins considered any other documents which were erroneously included. Accordingly, as the record does not reveal that any documents, which related to other inmates and were erroneously included in Allen's disciplinary record, were used in assessing his guilt or assigning his sanctions, the undersigned **FINDS** that this claim fails to state a constitutional violation.

*vi.) Ability to appeal decision*

Allen contends that DHO Mullins's failure to maintain an accurate record additionally frustrated his ability to appeal the adverse decision. (ECF No. 21 at 2). Allen states that he did not receive the "Notice of Discipline Hearing Form" until it was filed in the instant federal action by Respondent. Allen does not, however, indicate how this prevented him from making a viable argument on appeal.

Procedural due process requires that a DHO prepare a written statement regarding the evidence relied on, and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 564. DHO Mullins did so in this case, and the report was provided to Allen on April 3, 2018. (ECF No. 12-1 at 15). The report detailed the proceedings at the hearing, the evidence relied on, and reasons for the sanctions imposed. (*Id.* at 12-15) The report further informed Allen that he had the right to appeal the decision within 20 days of its

receipt. (*Id.* at 15). This Court has previously held that delivery of a DHO report which informs the inmate of ability to appeal the decision grants an inmate sufficient opportunity to appeal an adverse determination. *See e.g. Shahan v. Ormond*, No. 3:18CV200-HEH, 2018 WL 6681210, at \*7 (E.D. Va. Dec. 19, 2018), *aff'd*, 778 F. App'x 217 (4th Cir. 2019). This is so even in cases where there has been significant delay between the hearing and production of the report. *See e.g. Calixto v. Masters,* No. 1:15-CV-12778, 2016 WL 2600431, at \*4 (S.D.W. Va. Mar. 16, 2016), *report and recommendation adopted*, No. CV 1:15-12778, 2016 WL 2343890 (S.D.W. Va. May 3, 2016); *see also Shahan*, No. 3:18CV200-HEH, 2018 WL 6681210, at \*8  (collecting cases).

The DHO report in this case was delivered to Allen and complied with the minimal due process protections required by the constitution. Accordingly, the undersigned **FINDS** that Allen's claim DHO Mullins's failure to maintain an accurate record of the proceedings frustrated his ability to appeal fails to state a constitutional deprivation and should be dismissed.

### vii.) Incorrect witnesses were called

Allen contends that his due process rights were violated because the DHO called incorrect witnesses. (ECF No. 21 at 2). Respondent supplied documents detailing the disciplinary process. Included in these documents is a Notice of Discipline Hearing before the DHO form dated December 19, 2017, and signed by Allen. (ECF No. 12-1 at 8). The form reveals that Allen indicated he wished to have a staff representative, Counselor Silver, to represent him at the hearing and wished to present witnesses in his defense. The form lists three witnesses to be called and indicates they will speak to Allen's "whereabouts" during the incident and the "search of room." (*Id.*). At Allen's hearing, three witnesses gave testimony via telephone conference and answered questions

prepared by Allen. (ECF No. 12-1 at 12-13). These questions largely related to Allen's whereabouts during the incident, and a subsequent search. (*Id.* at 12). The inmates called provided various answers to the questions put to them, largely relaying that they were asleep during the time of the incident and thus unable to answer questions regarding Allen's whereabouts during that time, and that a search of the room occurred at some time between 1:00 and 2:30 a.m. (*Id.* at 13).

Allen contends that the witnesses called at his hearing were not the witnesses he wished to present. Allen asserts that the Notice of Hearing form supplied by Respondent contained an incorrect inmate registration number and was blank when he signed it, and when the form was later brought back to him with the witnesses identified, he informed prison staff that the wrong witnesses had been identified. (ECF No. 14-1 at 1). Allen states he was then issued a corrected Notice of Hearing form, which correctly identified his inmate registration number and the witnesses he wished to call. (*Id.*). Allen attaches what he purports is the correct Notice of Hearing Form for his case, and which contains the witnesses he asserts he wished to call instead of those who ultimately testified at his hearing. (ECF No. 14-5 at 1).

Respondent attached to the Sur-reply an affidavit from DHO Mullins. (ECF No. 17-1 at 2). DHO Mullins affirms that, although the incorrect inmate register number is listed on the form, the Notice of Hearing form supplied by Respondent is otherwise correct. (*Id.* at 2-3). DHO Mullins asserts that the inmate witnesses requested by Allen testified during the hearing telephonically via speakerphone due to Allen's placement in the Special Housing Unit. (*Id.* at 3). DHO Mullins states that Allen was present in the room and heard the testimony of the witnesses in accordance with BOP policy governing these procedures. (*Id.*).

24

Respondent also attached BOP Program Statement 5270.09, describing the procedures to be used when witnesses are called at a disciplinary hearing. (*Id.* at 15-16). BOP policy provides that inmates may not directly question witnesses during a hearing, and questions must be submitted to the DHO who will present the questions to the witness. (*Id.* at 16). Witnesses may testify in person or by other means such as telephone conference at the DHO's discretion. (*Id.*). The policy further provides that when an inmate is excluded from the hearing during the testimony of a witness, the DHO will inform the inmate of the substance of the testimony before the close of the hearing. (*Id.* at 17).

Allen is challenging the validity of documents provided by Respondent as part of his disciplinary record. Specifically, he alleges that the Notice of Hearing Form provided by Respondent, and bearing Allen's signature, is incorrect, and a different form he has supplied represents the witnesses he wished to be called instead of those reflected on the documents provided by Respondent. Allen alleges that the failure to call the correct witnesses at his hearing resulted in a violation of due process.

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has recognized that there is a "presumption of regularity" which "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Almy v. Sebelius*, 679 F.3d 297, 309 (4th Cir. 2012) (quoting *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926)); *see also Mira-Avila v. Barr*, 756 F. App'x 329, 331 (4th Cir. 2019). The Fourth Circuit has applied this presumption of regularity to records and proceedings produced in the prison disciplinary context. *See Craddock v. Rhodes*, 833 F.2d 1004 (4th Cir. 1987) ("No reason has been given that we should go behind the presumption of regularity which attaches to official records…") (*per curiam*).

25

Minor errors or inconsistencies in the agency record are generally insufficient to overcome this presumption of regularity as it relates to official acts and records. *See Coreas v. Holder*, 526 F. App'x 322, 326 (4th Cir. 2013) ("Nevertheless, we are unable to say that the government's failure in this regard is enough to overcome the presumption of regularity that is attached to the DHS's issuance of a notice to appear."); *see also Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, No. CV ELH-16-1015, 2017 WL 3189446, at *9 (D. Md. July 27, 2017). When the issue in question is officials' adherence to their own agency procedures, "[t]he presumption is 'sufficient to sustain the inference' that the agency did 'whatever was appropriate' to effectuate the procedure." *Petrelle v. Weirton Steel Corp.*, 953 F.2d 148, 153–54 (4th Cir. 1991) (quoting *R.H. Stearns Co. v. United States*, 291 U.S. 54, 63 (1934)). Accordingly, federal courts have generally been unwilling to credit a prisoner's assertion that the records produced in the course of prison disciplinary proceedings are falsified or incorrect absent convincing evidence. *See Dunmore v. Wendt,* No. CIVA 1:05CV119, 2007 WL 1848017, at *9 (N.D.W. Va. June 25, 2007) (refusing to credit inmate's assertion that DHO falsified report and ignored requests for witnesses); *Thomas v. Phillips,* No. 5:09-CV-01519, 2012 WL 2064531, at *1 (S.D.W. Va. June 7, 2012) (denying petitioner's claim that, among other violations, prison officials had falsified the hearing record); *Lytle v. Warden*, FCI-Bennettsville, No. 516CV02277TMCKDW, 2018 WL 4560573, at *9 (D.S.C. Mar. 30, 2018), *report and recommendation adopted*, No. CV 5:16-2277-TMC, 2018 WL 4178448 (D.S.C. Aug. 31, 2018) (same); *Foster v. Rivera,* No. 9:07-0576-HMH-GCK, 2007 WL 3002330, at *6 (D.S.C. Oct. 10, 2007) (petitioner unable to advance claims refuted by documents he signed in disciplinary record); *Russell v. Wilson*, No. 2:15CV51, 2015 WL 4479744, at *5 (E.D. Va. June 17, 2015), *report and recommendation adopted*, No.

2:15CV51, 2015 WL 4479746 (E.D. Va. July 20, 2015) (same).

Allen has not presented evidence sufficient to rebut the presumption of regularity as applied to the disciplinary record produced by Respondent. Allen alleges that the Incident Report provided is incorrect and the witnesses listed are not those he wished to call. However, the Incident Report supplied by Respondent identifies Allen, the relevant date, time, and factual circumstance of his charge. Furthermore, it reflects that Allen wished to call three inmates to testify regarding his location the night of the incident and a subsequent search of his room. (ECF No. 12-1 at 8). At Allen's hearing, three witnesses appeared and answered questions Allen prepared regarding his location and a search of the room they shared. (*Id.* at 12-13). The inmates' responses reveal that they were aware of who Allen was, if unable to answer where he was the night of the incident, and were aware of, and present for, the search of Allen's room that occurred between 1 and 2:30 a.m. the night of the incident in question. (*Id.* at 13). It would be an incredible coincidence if, as Allen asserts, these three inmates were incorrectly selected by a third party, happened to be inmates who were present during the events of the incident, and were able to discuss the events surrounding the search. The record of the hearing is entirely consistent with a finding that the Incident Report correctly identified the inmates to be presented as witnesses and the subject matter they would discuss. The mere fact that the Incident Report contains a clerical error in the inmate registration number is not enough to override the presumption of regularity attached to such documents.

Additionally, DHO Mullins asserts that Allen was present during the testimony of the witnesses and did not at any time object that the wrong witnesses had been selected. (ECF No. 17-1 at 3). This practice is consistent with BOP regulations governing the procedures to be employed when witnesses testify during a hearing. (*Id.* at 17). If Allen

27

had been excluded during the testimony of the witnesses, BOP policy would require DHO Mullins to disclose the substance of the testimony during the hearing. (*Id.*). While Allen asserts that his absence can be evidenced by the fact that he was required to prepare a list of questions for the witnesses, (ECF No. 20 at 6), this is part of ordinary BOP policy which does not permit inmates to question witnesses directly. (ECF No. 17-1 at 16).

It should be presumed, absent evidence to the contrary, that public officials perform their duties in accordance with governing regulations. *Petrelle,* 953 F.2d at 153–54. There is no reason to assume that DHO Mullins excluded Allen from the hearing and failed to disclose the substance of the witnesses' testimony in violation of BOP policy. While Allen asserts that the official record and documents provided by Respondent are incorrect, and willfully falsified, the evidence is entirely consistent with the record being an accurate representation of the proceedings. The record provided by Respondent indicates that Allen wished to have three inmates testify regarding the search of his room and his location. Three inmates subsequently testified with respect to these matters. Without evidence of irregularity, and with the record consistent with proper application of agency rules, Allen is unable to overcome the presumption of regularity which attaches to the official acts of public officers. *See Nardea v. Sessions*, 876 F.3d 675, 678 (4th Cir. 2017). Accordingly, the undersigned **FINDS** that this claim should be dismissed.

*viii.) DHO Mullins was biased*

Allen asserts that DHO Mullins was not an impartial decision maker. Allen states that DHO Mullins displayed animus toward Allen after he filed a sexual harassment complaint against one of DHO Mullins's co-workers. (ECF No. 21 at 1). Allen also asserts that, starting in mid-December and continuing until shortly before the hearing was conducted, DHO Mullins improperly opened his own investigation into the case by

28

frequently speaking with Allen about the charge without informing him that he was serving as the DHO for the case. (ECF No. 14 at 3-4). Allen states that DHO Mullins told Allen that he was "clearly guilty and it would be in his best intrest [sic] to plead guilty and move on to another institution." (*Id.* at 4).

Allen attached several handwritten requests for administrative remedy forms dated from December 19, 2017, to February 6, 2018, in which he objects to DHO Mullins's conduct. (ECF No. 21-1 at 8-11). Allen also supplied institutional documents detailing his administrative remedy history which reveals that complaints related to DHO Mullins's conduct were not received until, at the earliest, February 9, 2018, well after the hearing. (ECF No. 14-3 at 1-4). Allen states that the discrepancy between the dates he asserts he submitted the complaints, and the dates reflected in the administrative record, is due to various "transfer[s], rejections, and delay in the prison mail system." (ECF No. 14 at 4).[7] Allen also submitted a handwritten Declaration by Juan Nieves, Allen's cellmate at Fort Dix. (ECF No. 14-2 at 1). Mr. Nieves states that on December 26, 2017, he witnessed DHO Mullins question Allen about "his incident reports." (*Id.*). Mr. Nieves asserts that DHO Mullins told Allen he was guilty and to "stop wasting time." (*Id.*).

In the affidavit submitted by Respondent, DHO Mullins states that "[p]rior to conducting DHO hearings, I do not speak with the inmates involved unless they ask me specific questions related to their case." (ECF No. 17-1 at 3). DHO Mullins asserts that he does not recall speaking with Allen about the hearing at issue in this case prior to its occurrence. (*Id.*).

---

[7] Allen explains that a "complete copy" of the administrative requests he submitted can be found in filings related to a § 2241 petition he filed in this court challenging a separate disciplinary proceeding outcome. (ECF No. 21 at 2). The documents submitted in that case do not reveal any complaints submitted by Allen regarding DHO Mullins's conduct earlier than January 11, 2018, the date of the hearing. *See Allen v. Young*, Case No. 5:18-cv-01306 (S.D.W. Va. Sep. 20, 2018) at ECF No. 15-1 at 22-33.

An inmate facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. Prison hearing officers are not held to the same standard of neutrality as judges in criminal proceedings, however. *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). Nevertheless, "[t]he touchstone of due process is freedom from arbitrary governmental action," *Ponte v. Real*, 471 U.S. 491, 495 (1985) (citing *Wolff*, 418 U.S. at 558), and "[t]he due process requirements for a prison disciplinary hearing … are not so lax as to let stand the decision of a biased hearing officer." *Edwards v. Balisok*, 520 U.S. 641, 647, (1997).

"While a 'fair trial in a fair tribunal is a basic requirement of due process,' not all claims of bias rise to a constitutional level." *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "In order to prevail in a deprivation of due process claim, a defendant must show a level of bias that made 'fair judgment impossible.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994). Government officials, including prison hearing officers, are "presumed to act in good faith." *Worrell v. Deboo*, No. CIV.A. 5:07CV90, 2009 WL 1423923, at *3 (N.D.W. Va. May 20, 2009) (quoting *Bridge v. United States Parole Comm'n*, 981 F.2d 97, 106 (3d Cir.1992)). Disciplinary hearing officers are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *Piggie v. Cotton,* 342 F.3d 660, 666 (7th Cir.2003). Accordingly, "prisoners' claims of bias and retaliation are to be viewed with skepticism." *Wheeler v. Perdue*, No. 1:14CV36, 2015 WL 366412, at *8 (N.D.W. Va. Jan. 27, 2015) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996)). For this court to find DHO Mullins was biased against Allen, "there must be some substantial countervailing reason to conclude that [he was] actually biased with respect to factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th

Cir. 2004). This presumption of impartiality is especially strong where the inmate alleges a hearing officer was biased, but fails to point to any specific irregularities in a hearing which comported with due process. *See Dunne v. Olson*, 67 F. App'x 939, 944 (7th Cir. 2003) ("[N]or has [the petitioner] pointed to any irregularities in the process to rebut the presumption that hearing officers act in good faith."); *see also DePaola v. Clarke*, No. 7:17CV00028, 2019 WL 1370882, at *6 (W.D. Va. Mar. 26, 2019) (dismissing the petitioner's claim that DHO displayed impartiality prior to hearing where claim was undermined by record revealing a fair hearing); *Smith v. Masters,* No. 1:15-CV-11533, 2017 WL 1064032, at *3 (S.D.W. Va. Feb. 16, 2017), *report and recommendation adopted sub nom. Smith v. Romero*, No. CV 1:15-11533, 2017 WL 1058988 (S.D.W. Va. Mar. 20, 2017) (dismissing claim of bias where record revealed the DHO "made reasoned decisions based upon the evidence.") *Myrieckes v. Caraway,* No. CIV.A. L-11-917, 2012 WL 527585, at *4 (D. Md. Feb. 16, 2012); (noting that record of fair hearing suggested proceedings were not tainted by bias).

Allen asserts that DHO Mullins was biased against him because Allen had initiated an investigation for misconduct into another staff member at the jail. (ECF No. 21 at 1). The fact that Allen had filed a complaint against a different staff member is not a sufficient reason to question the impartiality of DHO Mullins. Numerous courts have held that the mere fact an inmate has named a hearing officer or a colleague in a complaint or lawsuit, or that the hearing officer has prior disciplinary history with the inmate, is an insufficient basis to suspect that the DHO will be unable to maintain impartiality. *See Wilson–El v. Finnan*, 263 Fed.Appx. 503, 505 (7th Cir.2008) ("[T]he fact that [staff] members had previously adjudicated cases against [the inmate], or had been the subject of his [prior] complaints, does not [without more] constitute proof of bias."); *see also Brown v. Rios*,

31

196 F. App'x 681, 684 (10th Cir. 2006) ("Standing alone, the allegation that the DHO was biased solely as a result of his being named a defendant in a civil suit by [the inmate] does not rise to a due process violation."); *Sacco v. U.S. Parole Comm'n*, 639 F.2d 441, 443 (8th Cir. 1981) (the inmate's claim that hearing officers were prejudiced due to prior involvement in his case failed to overcome "the presumption of honesty and integrity that clothes decision makers"); *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir.1983) ("[R]equiring each staff member who is the subject of a separate lawsuit to disqualify himself from sitting in judgment of that inmate would heavily tax the working capacity of the prison staff.").

Here, Allen received all the due process protections to which he was entitled at the hearing. He was provided with staff representation and the evidence arrayed against him was presented to him and explained. (ECF No. 12-1 at 12, 14). Allen was able to make a statement in his defense and present witnesses. (*Id.* at 12-13). DHO Mullins prepared a written report which detailed the evidence relied on, and the reasons for his determination. (*Id.* at 14). DHO Mullins relied on a written report from a correctional officer describing his discovery of an inmate with a phone in his possession, and his subsequent confirmation of the fact that the inmate in question was Allen, as well as other documentary evidence. This was sufficient evidence to support a finding that Allen committed the infraction. *See e.g. Dozier v. Warden, Lee Corr. Inst.,* No. CIVA3083371PMDJRM, 2009 WL 2929432, at *6 (D.S.C. Sept. 8, 2009) (DHO relied on correctional officer's account); *Beard v. Hollembaek*, No. 5:16-HC-2197-FL, 2018 WL 1570798, at *3 (E.D.N.C. Mar. 30, 2018) (same). DHO Mullins additionally provided a reasoned explanation for why he rejected Allen's defenses. (ECF No. 12-1 at 14-15).

BOP regulations provide that the "DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b). While Allen asserts that DHO Mullins acted improperly as an investigator of the incident, the conversations he describes took place after the investigation was completed and he was informed of his pending hearing. (ECF No. 12-1 at 8). The record demonstrates that DHO Mullins was not responsible for investigating the charges or producing the Incident Report. The Incident Report was instead prepared, reviewed, and referred to the DHO level by staff members other than DHO Mullins. (*Id.* at 5). DHO Mullins based his finding of guilt on the evidence as compiled by these staff members. (*Id.* at 14). There is no indication from the record that DHO Mullins based his decision on his own independent investigation into the case.

Even assuming, that, as Allen asserts, DHO Mullins spoke with him prior to the hearing and indicated he believed the evidence arrayed against Allen was strongly suggestive of guilt, this would not be enough to demonstrate the "extraordinarily high" standard necessary to establish that a hearing officer harbored a constitutionally suspect animus. *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006). An adjudicator's "remarks during the course of a proceeding that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 555 (1994). Accordingly, courts in this circuit and others have held that similar statements by a DHO do not indicate an impermissible bias where the DHO subsequently conducts a hearing which comports with due process and arrives at a reasoned decision regarding guilt *See DePaola*, No. 7:17CV00028, 2019 WL 1370882, at *6 (finding that despite the petitioner's assertion the DHO indicated he believed the petitioner was guilty prior to the hearing, "[a]lleged, general comments

before the hearing opened" did not mean the DHO was impermissibly biased in light of a hearing which comported with due process); *see also Carlucci v. Shartle*, No. CV1800051TUCRMDTF, 2019 WL 1473316, at *5 (D. Ariz. Jan. 2, 2019), *report and recommendation adopted*, No. CV-18-00051-TUC-RM, 2019 WL 1469165 (D. Ariz. Apr. 3, 2019), *aff'd sub nom. Carlucci v. Blanckensee*, 785 F. App'x 443 (9th Cir. 2019) (denying petitioner's claim that the DHO independently investigated case and told the petitioner he was guilty prior to hearing where record showed DHO based decision only on evidence compiled by other staff members); *Wheeler*, No. 1:14CV36, 2015 WL 366412, at *2 (denying claim that DHO evidenced bias by statement regarding inmate's likelihood of guilt based on his race where the "claim of bias is devoid of any factual support in the record, and the allegedly biased statement is insufficient to overcome the 'presumption of honesty and integrity' afforded to hearing officers.") (quoting *Withrow*, 421 U.S. at 47); *Edwards v. Bragg*, No. EP-11-CV-297-FM, 2012 WL 12887906, at *4 (W.D. Tex. July 30, 2012). (claim that DHO said the petitioner was guilty prior to hearing denied where "the record does not reflect any circumstances from which the Court could reasonably infer bias[,]" and the petitioner was thus unable to "overcome the presumption of the DHO's honesty and integrity.").

In light of the hearing conducted by DHO Mullins, which comported with the minimum requirements of due process and resulted in a determination of guilt based solely on evidence produced by the investigations of other staff members, Allen's allegations that DHO Mullins engaged in a series of conversations with him regarding the incident report and stated a belief that Allen was guilty of the charge is not sufficient to establish that DHO Mullins harbored "a level of bias that made fair judgment impossible" such that a constitutional deprivation has occurred. *Rowsey*, 327 F.3d at 341 (quotation

34

omitted). Accordingly, the undersigned **FINDS** that this claim should be dismissed.

## IV.    <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 2), be **DENIED;** that Petitioner's Motion to Compel, (ECF No. 31), be **DENIED** as moot; that Respondent's request for dismissal, (ECF No. 12), be **GRANTED;** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and to counsel of record.

**FILED:**  March 2, 2020

Cheryl A. Eifert
United States Magistrate Judge